IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GARY SUKOWATEY and
NANCY SUKOWATEY,

                                   Plaintiffs,                    OPINION and ORDER

        v.                                                        19-cv-764-wmc

ST. CROIX COUNTY, ST. CROIX COUNTY OFFICE
OF CORPORATION COUNSEL, ST. CROIX COUNTY
DEPARTMENT OF COMMUNITY DEVELOPMENT,
LARS LOBERG, LOBERG LAW, BRAND BUGGY, LLC
d/b/a GENESIS RECYCLING, SOMERSET AUTO,
NIKE STORAGE, TOM ELBERT, III, and TOM ELBERT, JR,

                                   Defendants.

        Invoking this court's subject matter jurisdiction under 28 U.S.C. § 1331, *pro se*

plaintiffs Gary Sukowatey and Nancy Sukowatey filed this lawsuit on the grounds that

state court proceedings surrounding the use of their property in St. Croix County violate

their federal constitutional rights.  The Sukowateys name 13 defendants.[1]  Seven of those

defendants -- St. Croix County, St. Croix County Office of Corporation Counsel, St. Croix

Department of Community Development, Scott Cox, Heather Wolske, Kevin Grabau, and

Sarah Borrell -- are jointly represented by insurance counsel and will be referred to as the

"County defendants."  Three additional defendants -- Buffalo Storage d/b/a Nike Storage,

Tom Elbert, III, and Tom Elbert, Jr. -- are also jointly represented and will be referred to

as the "Buffalo Storage defendants."  Finally, the remaining three defendants are Brand

Buggy, LLC d/b/a Genesis Recycling ("Genesis"), Lars Loberg and Loberg Law.[2]  Currently

---

[1] In addition, plaintiffs originally named Police Chief Aaron McWilliams and the Roberts Police
Department as defendants, but voluntarily dismissed them.  (Dkt. ##43, 49.)

[2] Genesis and attorney Lars Loberg filed answers to the amended complaint (dkt. ##16, 23), but
"Loberg Law" has not separately responded to the complaint, and it is unclear whether Loberg Law
was separately served.  Regardless, any reference to "Loberg" will be to Lars Loberg.

before the court are the County and the Buffalo Storage defendants' motions to dismiss or for judgment on the pleadings.  (Dkt. ##21, 30.)  The court will grant both motions, but for different reasons.  The County defendants' motion must be granted because the Sukowateys are essentially asking this court to review the validity of ongoing state court proceedings, which comity precludes, and because their alleged injuries arise from the state court proceedings they challenge.  The Buffalo Storage defendants' motion must also be granted for lack of subject matter jurisdiction because they are not state actors, and even if plaintiffs reframe their claim in a manner that may arguably invoke this court's jurisdiction, as they now suggest they might in their opposition brief, the Sukowateys fail to state a claim upon which relief can be granted.

## BACKGROUND[3]

### A. The Sukowateys' past disputes with St. Croix County over Operation of Junk Yard

The Sukowateys' claims in this lawsuit arise out of their decades-long land use conflict with St. Croix County, which includes issuance of a 2002 state court injunction and multiple, subsequent contempt proceedings.  To begin, the Sukowateys own real property located in St. Croix County at 905 120th Street, Roberts, Wisconsin ("the

---

[3] For the purpose of deciding the County and Buffalo Storage defendants' motions, the following facts are taken from the parties' pleadings and referenced documents, viewed in a light most favorable to plaintiffs as the non-moving party.  *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted); *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).  As appropriate, the court has also takes judicial notice of rulings in the Sukowatey's state court proceedings.  *See In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (state court orders "are public records and appropriate subjects of judicial notice") (citing *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); Fed. R. Evid. 901(b)(7)).

Property"), which they acquired from Nancy Sukowatey's mother Mary Thoen in 1987. The Sukowateys' disputes with St. Croix County date as far back as 1993, when the County sued over junk stored on the Property without a permit.[4] At that time, the parties were able to reach an understanding, resulting in the St. Croix County Board of Adjustment ("Board of Adjustment") grant of a special exception to Gary Sukowatey, which permitted him to operate a body shop on the Property subject to certain conditions, including limiting the maximum number of vehicles on the Property at any time to ten. After the parties filed a joint stipulation for dismissal, the circuit court dismissed that lawsuit without prejudice.

Just one year later, however, the Sukowateys filed their own writ of certiorari in St. Croix County Circuit Court against the County, challenging the conditions of the special exception permit as overly restrictive and unconstitutional. In 1998, after years of litigation, the Board of Adjustment revoked the special use permit issued in 1993 for violation of the ten-car limit, which the circuit court affirmed in a formal decision and the Wisconsin Court of Appeals.[5]

Although a few years would then pass without any formal disputes, the County filed a second complaint in the St. Croix County Circuit Court against the Sukowateys in 2001, alleging violations of multiple zoning ordinances without a special exception permit. *St.*

---

[4] Although there appears to be no dispute that the Property passed to the Sukowateys in 1987, the County continued to name both Mary Thoen and one or both of the Sukowateys in various, subsequent lawsuits. For simplicity sake, the court will focus on the claims against the Sukowateys alone.

[5] While the Certiorari action was being litigated, the Sukowateys also applied for a variance with the County to add an addition onto their garage on the Property. The Board of Adjustment denied that application, and the Sukowateys sought a writ of certiorari in the St. Croix County Circuit Court in response. The circuit court dismissed the action because the Sukowateys failed to timely serve the writ on the County.

*Croix Cty. v. Thoen*, No. 01-cv-153 (St. Croix Cty.).  Specifically, the County alleged that the Sukowateys were: (1) operating an auto body/auto repair shop, junk yard or salvage yard without a special exception permit; and (2) leasing space for commercial and residential use.

On April 9, 2002, the circuit court granted the County the following permanent injunction with respect to the Property:

> [D]efendants are enjoined from operating an auto body/auto repair shop, junkyard, salvage yard or any other commercial business on the property without a special exception permit. The defendants are also enjoined from leasing space on the property to third parties without a special exception permit. The defendants shall have sixty (60) days from the date of this order to remove all personal property not permitted under the St. Croix County Zoning Ordinance.

(Bitar Aff., Ex. 6 (dkt. #32-6) 3.)  That injunction remains in place.

Between 2003 and 2016, the St. Croix County Circuit Court issued three different contempt orders related to that injunction.  On July 22, 2003, the County first sought a finding of contempt on the grounds that the Sukowateys failed to clean up the Property as ordered by the circuit court.  On March 5, 2004, the circuit court found the Sukowateys in contempt for failing to clean up the property, and further found that their refusal to do so was willful and with the intent to avoid the court's order.  Accordingly, the court sentenced both Sukowateys to four months in the St. Croix County Jail, although staying the sentences so that the Sukowateys would have one last opportunity to clean the Property.  After the Sukowateys did so, the County agreed to dismiss the contempt charge, and the Sukowateys were not required to serve their jail sentences.

In 2008, the County sought a second finding of contempt and sanctions with similar results.  More specifically, after multiple hearings, the circuit court found the Sukowateys

4

in contempt of the 2002 injunction by virtue of their intentional "accumulation of junk" and sentenced them to 90 days in jail.  Again, the Sukowateys were given time to clean up their property, which they did, and the County dismissed the contempt charge.

In 2016, the County filed its third motion for contempt and sanctions.  Following a formal hearing on January 20, 2017, the circuit court once again found the Sukowateys in contempt of a clear injunction, having "continued to operate an auto body/auto repair shop and junk yard/salvage yard on the property." (Bitar Aff., Ex. 14 (dkt. #32-14).)  The court then imposed a six-month jail sentence and required the Sukowateys to clean the property.  However, this time, the Sukowateys failed to clean the property, and both were taken into custody on March 21, 2018.  (Bitar Aff., Ex. 17 (dkt. #32-17).)  After posting bond, the Sukowateys were then released.

### B. Appointment of Special Master

To carry out its January 20, 2017, remedial sanctions order, the St. Croix Circuit Court next appointed Lars Loberg, an attorney, to serve as a "Special Master" on May 11, 2018. (Bitar Aff., Ex. 18 (dkt. #32-18).)  The court's order further directed Loberg to visit the Property, consult with the County and the Sukowateys to determine which items on the Property were junk "as defined by Section 17.09 of the St. Croix County Code of Ordinances," and report to the court the junk items to be removed.  (*Id.*)  Finally, the order directed the Sukowateys to remove all items identified by the Special Master's report within 60 days of that report, adding that if the items were *not* removed within 60 days, the County would work with "area businesses to have the junk vehicles and other junk items removed from the subject property." (*Id.*)

After visiting the Property on July 13, Loberg submitted a status update of his

progress on August 14, 2018.  Specifically, he reported observing "vehicles, boats, trailers, and ATVs . . . [along with] miscellaneous items including, but not limited to water heaters, toilets, theater chairs, and the like," concluding that itemizing all of the pieces of property that meet the definition of "junk" under § 17.09 would be an "impossible an[d] onerous task" since he believed there to be "thousands of pieces of discarded items of personal property strewn about and located on the real property."  (Bitar Aff., Ex. 21 (dkt. #32-21) 1.)  Ultimately concluding that it would be easier to identify items that were *not* junk as defined by § 17.09, Loberg instead provided a list of nine items that did not constitute "junk" under the ordinance.

On August 31, the circuit court issued an order directing all items identified as junk to be removed from the Property by November 12, 2018.  When the Sukowateys missed that deadline, the circuit court ordered the Sukowateys to pay the cost for a private company to remove the remaining junk vehicles and items from the Property.

The Sukowateys next filed motions challenging those orders, which the circuit court denied.  Then, the Sukowateys retained an attorney, Peter Nickitas, who sought an evidentiary hearing.  The court held a hearing and agreed to receive a motion for reconsideration or to reopen, which they filed through counsel.  On July 22, 2019, the court denied that motion, noting that although counsel suggested that the proceedings and orders implicated the Sukowateys' constitutional rights, "19 years of litigation reflect a thorough and careful consideration of all the issues raised yet again by the Defendants." (Bitar Aff., Ex. 25 (dkt. #32-25) 3.)

On August 5, 2019, the circuit court next issued an "Order for Removal of Junk," directing Genesis Recycling to remove all junk vehicles from the Property, as identified in

the August 13, 2018, Special Master's Report/Inventory, as well as a large, junk boat identified by the Report. (Bitar Aff., Ex. 26 (dkt. #32-26) 1.) The order also stated that these items should be removed the week of August 26, 2019, while St. Croix County should arrange for removal of other personal property junk identified in the Report.

While the Sukowateys appealed the circuit court's Order for Removal of Junk, and subsequently filed a motion seeking relief pending appeal, the court of appeals denied any further delays.

### C. Execution of the Order for Removal of Junk

On August 29, 2019, the County entered the Property to execute the Order for Removal of Junk, and apparently has been back four additional times to continue clean up on the Property. The Sukowateys also moved some vehicles from the Property and left them on the shoulder of a side road outside of the Nike Storage Center, one of the Buffalo Storage defendants. After the St. Croix County Sheriff ("Sheriff's Office") deemed those vehicles abandoned pursuant to Wis. Stat. § 342.40 and Chapter 76 of the St. Croix County Ordinances, they were removed from the Nike Storage Center and stored at Genesis Recycling.

On October 11, 2019, the Sheriff's Office sent the Sukowateys a letter informing them that, in accordance with Wis. Stat. § 342.40(1m), they had 10 days to reclaim the abandoned vehicle from Genesis Recycling.[6] Because the Sukowateys were out of town, they were also informed that the 10 days would not begin until November 1, 2019. Instead of reclaiming the abandoned vehicle, however, the Sukowateys wrote a letter demanding

---

[6] Apparently, one of the vehicles deemed abandoned and removed from the Nike Storage Center was titled in Gary Sukowatey's name; none were in Nancy's name.

7

return of all the vehicles.

At the time the parties completed their briefing of this motion, the Sukowatey's appeal from the Order for Removal of Junk was still being litigated. The Sukowateys were also apparently continuing to litigate related issues in the circuit court. Specifically, on March 6, 2020, they filed a motion for contempt of court, claiming that the County had failed to follow that court's removal order.

On July 9, 2020, the Wisconsin Court of Appeals dismissed the Sukowateys' appeal on the removal order for their failure to file a brief. However, the publicly available record of proceedings indicates that the County and the Sukowateys are still in circuit court on matters related to executing the requirements of the Order for Removal of Junk. For example, on May 4, the circuit court denied defendants' motion for contempt. *St. Croix v. Thoen*, No. 01-cv-153 (St. Croix Cty.), *available at* https://wcca.wicourts.gov/ (last visited Dec. 1, 2020). Moreover, on July 21, the County filed a motion for remedial sanctions, and on July 29, it filed a motion for payment of invoices. On August 5, the circuit court held a hearing to address removal of the remaining junk, and on October 23, the court held another hearing to ensure the Sukowateys were complying with the court's removal order, resulting in an order that any remaining personal property items be removed by November 20, 2020. Since that time, it appears that the Sukowateys filed a motion for contempt against the County, and an order was entered on November 13, 2020, but it is unclear whether there are any outstanding issues currently before the court or whether the Sukowateys intend to appeal any of the court's recent orders.

## D. Allegations in Amended Complaint

Although the Sukowateys purport to challenge the constitutionality of the County's

actions over the past 19 years generally, the allegations in their amended complaint focus on events related to the County's 2019 efforts to clean up the Property.  Specifically, they allege that employees of Brand Buggy, LLC d/b/a Genesis Recycling, were directed by defendants Grabau and Borrell (both employees of St. Croix County Community Development) to take their personal property and equipment.  According to the amended complaint, the Genesis employees also crawled into dumpsters that contained recyclable materials and took precious metals out of them.  Additionally, on August 26, 2019, defendants Cox, Wolske, Grabau and Borrell also allegedly removed multiple vehicles from the Property that were not listed in the Order for Removal of Junk.

The Sukowateys further claim that Grabau, Borrell and Genesis employees trespassed onto adjacent property and almost took property from their neighbors, but were stopped by law enforcement.  Without specific details or dates, they even assert that the defendants (presumably the County defendants) went to three locations other than the Property and took their vehicles, property and equipment located there.  Finally, the Sukowateys add that the County "conspired with Nike Storage to defraud" them, despite their contract with Nike (allegedly signed by defendant Tom Elbert, Jr.) to store their property at Nike's storage facility.

Construed liberally, plaintiffs appear to claim that:  (1) the County defendants inappropriately carried out a court order for the removal of junk and conspired with Genesis and the Buffalo Storage defendants to steal their property from private storage locations; (2) defied the court order by going onto three private properties and taking vehicles, personal property and equipment; (3) engaged in a wrongful taking of personal property and equipment; (4) trespassed their property; and (5) violated their Eighth

Amendment rights, citing to the United States Supreme Court's decisions in *Timbs v. Indiana*, 139 S. Ct. 682, 698 (2019), and *Kinick v. Township of Scott*, 139 S. Ct. 2162 (2019). As a result, plaintiffs seek monetary damages and injunctive relief in the form of a restoration of the property rights that were in place when they acquired the property in 1987.

OPINION

The County defendants and the Buffalo Storage defendants seek (1) dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), (2) dismissal for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), or (3) judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). When a defendant raises a factual challenge to subject matter jurisdiction, this court is "not bound to accept as true the allegations of the complaint which tend to establish jurisdiction"; rather, it "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (internal quotation marks and citations omitted). In the absence of a factual dispute regarding jurisdiction, the court applies the same standard as is used when reviewing a motion to dismiss under Rule 12(b)(6). Similarly, a motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as Rule 12(b)(6), except that the court considers not only the complaint and referenced documents, but all pleadings, as well as documents that are incorporated into *any* pleading by reference. *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

10

Designed to test the complaint's legal sufficiency, dismissal under Rule 12(b)(6) is warranted only if no recourse could be granted under any set of facts consistent with the allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007).  "To survive a motion to dismiss under Rule 12(b)(6)," therefore, a plaintiff must allege sufficient facts to (1) "state a claim for relief that is plausible on its face" and (2) give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570); *see also Twombly*, 550 U.S. at 555.  Under the plausibility standard, the court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."  *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).  Of course, in evaluating the sufficiency of the complaint and properly considered evidence, the court must "draw[] all reasonable inferences in favor of the plaintiffs."  *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

## I.    County Defendants

The County defendants raise several grounds for dismissal, but the court need go no further than addressing jurisdiction since abstention appears appropriate under *Younger v. Harris*, 401 U.S. (1971), and, regardless, the *Rooker-Feldman* doctrine precludes this court from addressing the claims against these defendants.  *See McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit."); *see also Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 535

n.4 (7th Cir. 2004) ("we may not consider the issue of res judicata because we lack the subject matter jurisdiction to do so").[7]

### A.  *Younger* Abstention Doctrine

The doctrine outlined in *Younger v. Harris*, 401 U.S. 37 (1971), alternately called "abstention" or non-intervention, is based on traditional principles of "equity, comity, and federalism." *SKS & Assoc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010).  "The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *Id.* at 677 (citing *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007)).  "The rule in *Younger* . . . is designed to permit state courts to try state cases free from interference by federal courts." *Forty One New, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007). Significantly here, the Supreme Court has extended the *Younger* abstention to "civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Mulholland v. Marion Cty. Elec. Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)).  The "critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution." *Mulholland*, 746 F.3d at 816 (citing *Sprint Communications, Inc.*, 134 S. Ct. at 593).

---

[7] The court also notes plaintiffs' failure to respond to defendants' arguments under *Younger* or *Rooker-Feldman*, as well the County defendants' argument that plaintiffs have effectively waived any objection.  *See Alito v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver occurs "where litigant effectively abandons the litigation by not responding to the alleged deficiencies in a motion to dismiss"); *Cincinnati Ins. Co. v. Eastern Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose an argument suggests acquiescence, and "acquiescence operates as a waiver").  This is a fair point to raise, since it is their burden in the first instance to prove that subject matter jurisdiction is proper.  *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012).  However, the court addresses these arguments nonetheless, given its independent obligation to assure itself of subject matter jurisdiction and out of deference to plaintiffs' *pro se* status.

To start, plaintiffs here are not just seeking monetary damages, but injunctive relief related to both the 2002 injunction and the Order for Removal of Junk. Regardless, the Seventh Circuit has held that *Younger* principles apply where adjudication of damages claims would disrupt ongoing state proceedings. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (*Younger* principles applied to plaintiff's § 1983 damages claim alleging violation of his Fourth Amendment rights, since the federal claim "involve[d] constitutional issues that may be litigated during the course of his criminal case"). Even though there is some uncertainty as to the continuing execution of the Order for Removal of Junk, the court concludes that abstention is appropriate.

First, the proceedings in St. Croix County Case No. 01-cv-153 implicate the State's interest in enforcing its orders. Indeed, the three contempt proceedings have resembled a criminal proceeding: plaintiffs have been held in contempt of court multiple times, and those findings resulted in multiple jail sentences and one arrest. Second, while plaintiffs appear to have abandoned their appeal of the Order for Removal of Junk, the state circuit court appears to continue to deal with motion practice related to continuing execution of the Order for Removal of Junk, and it is possible that plaintiffs may appeal that court's most recent orders to the Wisconsin Court of Appeals. Third, contempt motions like that currently before the circuit court fall under the umbrella of proceedings that require abstention. *See Juidice v. Vail*, 430 U.S. 327, 327 (1997) ("The principles of federalism and comity enunciated in *Younger* and *Huffman* apply to a case in which the State's contempt process is involved."). In these circumstances, abstention remains appropriate so as not to interfere with or disrupt the circuit court's attempts to enforce its orders and resolve those state proceedings.

13

Plaintiffs argue in opposition that the actions taken by "the Defendants are outside the limitation set forth by a court order," but plaintiffs go no further to identify the actions of the County defendants (or for that matter, any of the remaining defendants) that are independent of the proceedings in Case No. 01-cv-153. Given that plaintiffs are attempting to challenge the breadth and execution of the Order for Removal of Junk, and the circuit court continues to address plaintiffs' complaints about the manner in which the County defendants have carried out of the Order for Removal of Junk, the court sees no basis to infer that plaintiffs are challenging conduct unrelated to those proceedings. As such, to consider plaintiffs claims now would no doubt interfere with the state court's ongoing enforcement of that order and subsequent contempt proceedings.

Typically, after finding that abstention is warranted, the court considers whether to stay or dismiss plaintiff's claims. A stay is generally appropriate when a plaintiff is foreclosed from bringing his damages claims in the state proceedings. *See Simpson v. Rowan*, 73 F.3d 134, 138-39 (7th Cir. 1995). Here, however, dismissal is appropriate, since the *Rooker-Feldman* doctrine bars plaintiffs' claims in this lawsuit regardless of *Younger* abstention.

### B. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine stands for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring); *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995) (noting that dismissal under *Rooker-Feldman* is for lack of jurisdiction, which is "based on the principle that inferior federal courts cannot reexamine

14

the decisions of state tribunals in civil litigation.") (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)).  As such, this doctrine prevents a party "complaining of an injury caused by [a] state-court judgment" from seeking redress in a lower federal court.  *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 291-92 (2005).  Moreover, a litigant may not avoid the *Rooker-Feldman* doctrine simply by casting his complaint in the form of a civil rights action.  *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993).  Rather, litigants who feel that a state court proceeding has violated their federal constitutional rights must appeal that decision through the state court system and then as appropriate to the United States Supreme Court.  *See Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1990).

In particular, *Rooker-Feldman* doctrine bars federal review of allegations or claims that implicate or are "inextricably intertwined" with that state court judgment.  *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008); *see also Wright v. Tackett*, 39 F.3d 155, 157-58 (7th Cir. 1993) (per curiam) (*Rooker-Feldman* doctrine bars review of constitutional claims that are inextricably intertwined with state court proceedings).  The determination of whether a claim is inextricably intertwined "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy."  *Taylor v. Federal Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004).

Defendants' argument is straightforward:  plaintiffs are asking this court to review the St. Croix County Circuit Court's decisions, and they have *no* claims or injuries independent of their challenge to those proceedings.  Besides challenging the manner in which the County defendants carried out of the Order for Removal of Junk, plaintiffs claim

15

that "St. Croix County conspired to take away [their] 'grandfather[ed] rights for the use of [the Plaintiffs'] work and rentals." (Am. Compl. (dkt. #8) 4.) These claims are a *direct* challenge to the St. Croix Circuit Court's 2002 injunction, which explicitly prohibited them "from operating an auto body/auto repair shop, junkyard, salvage yard or any other commercial business on the property without a special exception permit." (Dkt. #32-6, at 3.) Plaintiffs' failure to dispute this is unsurprising since their allegations acknowledge as much, specifically alleging that they have been embroiled in state *litigation* with the County for over 19 years, when the County allegedly "conspired" to take their rights away. Furthermore, all of plaintiffs' claimed injuries derive directly from the state courts' decisions. Finally, in addition to seeking monetary damages for the resulting loss of property, plaintiffs are seeking an injunction that would reinstate their previously-held right to use the Property as a body shop in *direct opposition* to the state court's 2002 injunction. Thus, there could be no more direct attempt to litigate the issues already addressed in state court.

The result is the same for plaintiff's claims challenging the breadth of the Order for Removal of Junk and related motions challenging how the County carried out that order, since "carrying out a state court's decision is not an independent violation of the Constitution." *O'Malley*, 465 F.3d at 803. Plaintiffs appear to appreciate on some level their obligation to pursue their claims challenging the Order for Removal of Junk through the state court system, having initiated an appeal and then abandoning it. Yet their failure to prosecute their appeal is not license for a federal court to act as an appellate court. Rather, the proper course of action for plaintiffs would have been to appeal through the Wisconsin court system either the 2002 injunction or the appeal of the Order for Removal

16

of Junk, or to appeal an as yet to be completed execution of that order, not to ask this court to re-adjudicate their disputes with the state circuit court's decisions or the County defendants. Accordingly, plaintiffs' claims in this lawsuit challenging the St. Croix Circuit Court's 2002 injunction and Order for Removal of Junk, and the County defendants' actions to execute those order, are all barred by the *Rooker-Feldman* doctrine.

Since the court lacks subject matter jurisdiction over plaintiffs' claims challenging both the 2002 injunction and the Order for Removal of Junk, the court will also dismiss Genesis Recycling and Loberg. Indeed, unlike plaintiffs' contract-based claims against the Buffalo Storage defendants, which will be discussed separately below, plaintiffs' claims and injuries related to Genesis Recycling and Loberg arise solely out of their involvement in the same state court proceedings, and plaintiffs had the opportunity to address the applicability of the *Rooker-Feldman* doctrine to their claims.[8]   *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (where one defendant files a motion that is equally effective in barring claim against other defendants, court may *sua sponte* enter judgment in favor of the additional non-moving defendant if the plaintiff had an adequate opportunity to argue in opposition to the motion); *see also Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (considering whether *Rooker-Feldman* bars a claim *sua sponte* because the court "is required to consider subject-matter jurisdiction as the first

---

[8] Lars Loberg recently filed a motion to dismiss, raising absolute and qualified immunity, failure to state a claim, and lack of subject matter jurisdiction as grounds for dismissal. (Dkt. ##53, 54.) The court need not resolve these arguments, since plaintiffs are challenging Loberg's actions as the Special Master in the St. Croix County proceedings. Additionally, although never formally responding to the complaint, the court will dismiss Loberg Law as well, since any liability would flow through Lars Loberg's actions as Special Master. *See El v. Circuit Ct. of the Tenth Jud. Cir. of Ill. Peoria*, 132 F. Supp. 3d 1024, 1030 (C.D. Ill. 2015) ("If the Court lacks subject matter jurisdiction over some or all of the claims . . . , then this approach has the added benefit of determining whether claims can proceed against those defendants who have been served but not responded.).

17

question in every case, and we must dismiss this suit if such jurisdiction is lacking").

## II.      Buffalo Storage defendants

As noted, the Buffalo Storage defendants also seek dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  Starting with their subject matter jurisdiction argument, the jurisdiction of this court is limited only to "cases or controversies" that are "authorized by Article III of the [United States] Constitution and the statutes enacted by Congress pursuant thereto."  *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  In other words, unlike state courts, which have subject matter jurisdiction over a broad assortment of common law causes and claims, "[a] federal court is the wrong forum [not only] when there is no case or controversy, [but] when Congress has not authorized it to resolve a particular kind of dispute."  *Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (explaining that "subject-matter jurisdiction is a synonym for adjudicatory competence").

Generally, a federal district court such as this one has the authority to hear two types of cases: (1) those in which a plaintiff alleges a cognizable violation of his rights under the Constitution or federal law, 28 U.S.C. § 1331; and (2) those in which a citizen of one state alleges a violation of his or her rights established under state law by a citizen of another state where the amount in controversy exceeds $75,000, 28 U.S.C. §§ 1331-32. The Buffalo Storage defendants rightly point out that even though plaintiffs assert jurisdiction under § 1331, plaintiffs have not alleged any claims invoking federal law

against them.  To the contrary, plaintiffs' sole assertion against the Buffalo Storage defendants is that they "conspired" with the County defendants to defraud the plaintiffs of their property, despite having a contract with Elbert, Jr., to store property there. Certainly, a breach of contract sounds in state common law, and plaintiffs' allegation of the Buffalo Storage defendants engaging in a conspiracy is no more than a conclusory assertion.  Regardless, the conspiracy claim neither asserts nor calls to mind any claim sounding under federal law against these defendants.

Still, in opposition, plaintiffs attempt to reframe their claim against the Buffalo Storage defendants as a violation of his Fourth Amendment rights, suggesting a federal question under 42 U.S.C. § 1983.[9]  In particular, plaintiffs claim the Buffalo Storage defendants engaged "with other Defendants in removing items without a proper warrant in violation of their civil rights."  (Dkt. #24 at 2.)

To start, since the Buffalo Storage defendants are private individuals, plaintiffs must establish that they acted "under color of state law" to pursue any relief under § 1983.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Merely private conduct, no matter how discriminatory or wrongful," cannot be considered action "under color of state law."  *Id.*  Although the failure to allege that a defendant acted under color of law "does not deprive a district court of jurisdiction over a § 1983 claim," that deficiency "means that the plaintiff has failed to state a claim for which relief can be granted."  *Miles v. Mirrorball, Inc.*, 65 F. App'x 569, 570 (7th Cir. 2003) (collecting cases).

---

[9]  Plaintiffs would also take issue with the fact that the Buffalo defendants have not yet filed an answer to their amended complaint, but this argument lacks any merit.  Since the Buffalo defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), they were entitled to file the present motion *before* filing an answer.  Fed. R. Civ. P. 12(b).

Here, plaintiffs do not allege or argue that the Buffalo Storage defendants took *any* action under color of state law, although a private citizen *may* be held liable under § 1983 for acting under color of state law for conspiring with a state actor. *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000) (citing *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992)).  However, "[t]o establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individuals were willful participants in joint activity with the State or its agents." *Id.* (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)).

Plaintiffs have alleged *no* facts that begin to support their assertion that the Buffalo Storage defendants conspired with any state defendants to take away their property located at Nike Storage.  Indeed, the only tie these defendants have to the operative facts is that certain vehicles and (possibly) other property items were removed from Nike Storage or on a street adjacent to its property.  There is no allegation that any of the employees of any of the Buffalo Storage defendants, including the individual defendants (Elbert, III , and Elbert, Jr.) were involved in the removal of any of those items, much less than they assisted in planning the removal.  Worse yet, plaintiffs allege no facts beginning to suggest that the Buffalo Defendants had knowledge that the removal took place, much less that they planned it or facilitated with the County defendants.  Given these deficiencies, even assuming for the sake of argument that as *pro se* plaintiffs they allowed to amend their complaint further to include an express Fourth Amendment claim against the Buffalo Storage defendants, it would be dismissed.  *See Turner v. City of Chicago, Ill.*, No. 12 C 9994, 2013 WL 4052607, at *6 (N.D. Ill. Aug. 12, 2013) (finding that plaintiffs failed to

sufficiently plead a conspiracy claim where those allegations were conclusory and threadbare and failed to demonstrate any type of agreement); *see also Thompson v. Vill. of Monee*, No. 12 C 5020, 2013 WL 3337801, at *7–8 (N.D. Ill. July 1, 2013) (dismissing complaint against private party where plaintiff made "only conclusory allegations regarding any agreement" between the private party and state actor).

Finally, in their opposition brief, plaintiffs turn their focus to the express claim that the Buffalo Storage defendants breached their contract with plaintiff. As mentioned, such a claim falls under the purview of state law, and thus, raises no federal question. Moreover, plaintiffs have not alleged that the requirements for diversity jurisdiction are met in their amended complaint, nor could they given the almost certain Wisconsin residency of plaintiffs and at least some of the named defendants.

Accordingly, the court will also grant the Buffalo defendants' motion to dismiss on the grounds that the court lacks subject matter jurisdiction over plaintiffs' conspiracy to defraud and contract claims, and because plaintiffs' suggestion that the Buffalo Storage defendants violated their civil rights fails to state a claim upon which relief can be granted.

## ORDER

IT IS ORDERED that:

(1)   The County defendants' motion to dismiss and for judgment on the pleadings (dkt. #30) is GRANTED, and plaintiffs' claims against the County defendants, Brand Buggy LLC d/b/a Genesis Recycling, Loberg and Loberg Law are dismissed without prejudice for lack of subject matter jurisdiction.

(2)   Lars Loberg's motion to dismiss (dkt. #53) is DENIED as moot.

(3)   The Buffalo Storage defendants' motion to dismiss (dkt. #21) is GRANTED, and plaintiffs' conspiracy to defraud and breach of contract claims against the Buffalo Storage defendants are dismissed without prejudice for lack of

21

subject matter jurisdiction, as is any suggested claim against the Buffalo Storage defendants under 42 U.S.C. § 1983, for failure to state a claim upon which relief can be granted.

(4)     Plaintiffs' motion for stay (dkt. #39) is DENIED as moot.

(5)     The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 5th day of January, 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge